# EXHIBIT 6

```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF MISSOURI
                    EASTERN DIVISION

B.F., et al.,                        )
                                     )
          Plaintiffs,                )
                                     )
   v.                                ) No. 4:12-CV-1760-CAS
                                     )
ABBOTT LABORATORIES, INC., et al.,   )
                                     )
          Defendants.                )
```

**PRETRIAL CONFERENCE**

**BEFORE THE HONORABLE CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

**MAY 19, 2016**

**APPEARANCES:**

For Plaintiffs:   Daniel A. Raniere, Esq.
                  Justin M. Durel, Esq.
                  **AUBUCHON, RANIERE & PANZERI, PC**

                  John T. Boundas, Esq.
                  John Eddie Williams, Jr., Esq.
                  Brian A. Abramson, Esq.
                  Margot G. Trevino, Esq.
                  **WILLIAM KHERKHER**

                  George Erick Rosemond
                  **ROSEMOND LAW, P.C.**

For Defendants:   Dan H. Ball, Esq.
                  Stefan A. Mallen, Esq.
                  **BRYAN CAVE LLP**

                  Kathleen S. Hardway, Esq.
                  Paul F. Strain, Esq.
                  James C. Fraser, Esq.
                  Stephen E. Marshall, Esq.
                  **VENABLE LLP**

*REPORTED BY:*    *Gayle D. Madden, CSR, RDR, CRR*
                  *United States District Court*
                  *111 South Tenth Street, Third Floor*
                  *St. Louis, MO  63102      (314) 244-7987*

1 THE COURT: You got it?

2 MR. BOUNDAS: I've got it.

3 MR. BALL: Okay.

4 THE COURT: Okay. I think that covers a number of
5 things. So I think it, you know, pretty much covers No. 5
6 also. We're not going to deal with this epilepsy in general
7 other than studies that indicate birth defects post-'96.

8 Okay. No. 6 here. Defendant wants to exclude
9 evidence of the medical condition of the siblings that were
10 born before Ms. Forbes started taking Depakote. Well, you
11 know, if we're going to get into this whole genetic thing,
12 that's denied. You know.

13 No. 7. How many of these things do I still have a
14 question mark by? Okay. Abbott seeks to exclude evidence
15 relating to thalidomide, Accutane, other drugs that were
16 pulled from the market. Defendant says these are irrelevant
17 and will inflame the jury.

18 Okay. Right now I don't see why, you know, the
19 pulling of these other drugs is relevant.

20 MR. WILLIAMS: May I?

21 THE COURT: Go ahead.

22 MR. WILLIAMS: John Eddie Williams. If I may address
23 that, you're right. Pulling of the drugs has nothing to do
24 with it. I don't care about that. In fact, they're still on
25 the market. So they're wrong about that. The issue is -- and

1   you'll look at No. 8 -- Dr. Oakley, who is one of the premier
2   teratologists in the world -- he has gotten all these lifetime
3   awards.  He was the head of the CDC.  He was -- of the birth
4   defect part.  He was the top birth defect guy for the U.S.
5   government for years.  And Dr. Oakley will say that this drug,
6   valproic acid, that causes these birth defects in the first 28
7   days after conception -- this eminent, world-class person will
8   say that in all of his studies that there are -- that -- that
9   this valproic acid in Depakote is one of the three most potent
10  human teratogens known to mankind, and the other two are
11  thalidomide and Accutane.  And the reason that's important is
12  if you look in the PDR, the Physicians' Desk Reference, that
13  has the warnings --
14          THE COURT:  Yeah.  Well, they've got Google now.
15          MR. WILLIAMS:  That's exactly right.  But you'll see
16  that thalidomide and Accutane have far more powerful warnings
17  than valproic acid.  In fact, they have things with a circle
18  and an "X" about their drug.  They have programs that if you
19  were to use their drug -- this is only women of childbearing
20  age.  It doesn't apply to you or me or women of not
21  childbearing potential.  They have programs that you have to
22  enroll in, and you have to promise every month and every week
23  or every month that you will not get pregnant.  So the -- so
24  it's absolutely relevant to look at what are the three
25  powerful drugs --

```
 1              THE COURT:  Well, that sounds relevant -- his
 2   testimony.  Okay.  I'm with you so far with that.
 3              MR. WILLIAMS:  And what did the other manufacturers
 4   do?  And what did they fail to do?  That's the point to make.
 5              MR. STRAIN:  If I may, Your Honor, then.
 6              THE COURT:  Okay.  Mr. Mallen, go ahead.
 7              MR. STRAIN:  Since counsel focused on opinion, I
 8   think the Court would want to know that in the expert reports
 9   of Dr. Oakley and Dr. Blume, their warning expert, they don't
10   make the allegations about the comparison to thalidomide and
11   Accutane.  So the idea that it's relevant and important to the
12   case is purely from the attorneys.  Your Honor saw that in the
13   briefing.  They don't rely on anything Oakley said --
14   Dr. Oakley said or Dr. Blume said.  This is purely attorneys
15   trying, after the expert reports, to use thalidomide and
16   Accutane as points of relevance.  Now, I --
17              THE COURT:  Okay.  Let's hear about this.  Let's hear
18   about this, about this doesn't exist other than in your mind.
19              MR. WILLIAMS:  Okay.  Well, Your Honor, so the
20   world-class expert that I'm talking about, Dr. Oakley --
21              THE COURT:  Well, I'm not going to dispute that he
22   was world-class or no class, but what I'm trying to get to is
23   just what Mr. Mallen said that this was not his opinion.
24              MR. WILLIAMS:  In supplemental reports filed, dated
25   June 19th, 2015, he clearly states that it's one of the top
```

```
 1   three drugs --
 2            THE COURT:  Fine.
 3            MR. WILLIAMS:  I'll read it.
 4            THE COURT:  Fine.  Fine.  Fine.  Okay.
 5            MR. BALL:  Well, it's not in this case.  That's not
 6   this case.  That was filed in other cases.
 7            MR. WILLIAMS:  Let me finish.
 8            MR. BALL:  That's not this case.
 9            THE COURT:  Okay.  Go ahead.
10            MR. BALL:  After his deposition.
11            MR. WILLIAMS:  So your cutoff date, Your Honor, was
12   January, I think, 2nd or 21 of 2015.  Since then, in these
13   same cases with the same lawyers, we have found that response
14   five times.  Judge Ohmer -- it came in in Judge Ohmer's court,
15   and then we supplemented.  It was past your cutoff date, but
16   they have deposed Dr. Oakley on this subject August 4th, 2015.
17            THE COURT:  Fine.  Okay.  I got you.  I got you.  No
18   surprise.  So --
19            MR. WILLIAMS:  None at all.
20            THE COURT:  Well, what about -- is he -- is he making
21   a --
22            MR. BALL:  Can I address --
23            THE COURT:  Hold on.  I'm going to get back to you
24   there.
25            Is he making a comparison -- so Mr. Mallen said he
```

1  wasn't making any comparison to these other drugs.

2  　　　　MR. WILLIAMS:  Well, is he making a comparison?  He

3  makes the comparison in the sense that these are the three

4  most dangerous drugs.  And then when they say -- and then our

5  expert on labeling can easily show what the labels were for

6  these other two drugs, where they actually gave a real strong

7  warning, and they had a program which --

8  　　　　THE COURT:  Okay.  That's enough.  That sounds pretty

9  good.

10  　　　　Okay.  Who's up?  Mr. Ball?  Mr. Mallen?

11  　　　　MR. BALL:  Yeah.  I want to make sure.  I want to

12  make sure this is clear.  They filed an expert report in this

13  case, and I deposed Dr. Oakley in this case, and there was

14  nothing in that report or this deposition in this case -- that

15  we were relying upon -- about this top three in the whole PDR

16  and that type of thing.  That's point one.  Just because they

17  filed something --

18  　　　　THE COURT:  Well, you know, but as I told him, I

19  don't see -- you know, I mean, this has been done a number of

20  times with you all.  I don't see this as a surprise.  I don't

21  see how you're prejudiced.

22  　　　　MR. BALL:  Okay.  That's number one.

23  　　　　The second point is even more clear then.  The second

24  point is Dr. Blume, who is their warnings expert, has never

25  submitted a report or a deposition saying, "You guys should do

1    what thalidomide and Accutane does in their warnings."  Never
2    done that.  So that is a surprise.
3            THE COURT:  Well, I don't know that there's going to
4    be a "You should have done."  Maybe he's just going to say
5    that this is what these people do and this is what --
6            MR. BALL:  But that has not been -- that has not been
7    from this expert in any of this litigation.
8            THE COURT:  Well, has there been any testimony by any
9    expert as to what these three other drug labels say?
10           MR. BALL:  No.  No.  They've mentioned them, that
11   they're all -- can cause birth defects and that they're the
12   top three most dangerous.  One of them is for acne.  One of
13   them is for morning sickness.  But none of their experts have
14   come forward and said, "Here's the label with Accutane.
15   Here's the label with thalidomide.  Depakote doesn't have that
16   kind of label."  Nobody has done that in -- in -- from
17   Dr. Blume or Dr. Oakley.  And doggone it.  We ought to be able
18   to rely upon --
19           THE COURT:  Okay. Okay.
20           MR. BALL:  Okay.
21           THE COURT:  Stop beating a horse.
22           MR. BALL:  Okay.
23           THE COURT:  You know, you're gilding the lily.  You
24   know, I've got it.  I got it.
25           MR. WILLIAMS:  I've got the -- if the Court would

```
 1   like to see it, I've got the --
 2             THE COURT:  I don't want -- you just tell me what it
 3   says.  You know, you're an officer of the court.  You don't
 4   want me to do one of them Trumps on you and call you a
 5   so-and-so somebody, do you?  I mean, come on.
 6             MR. WILLIAMS:  No.  I'm just pointing out, Judge.  I
 7   think the jury can look at these two and see these programs
 8   and these warnings, and they should be entitled to look at the
 9   three most potent human teratogens and compare their
10   conduct -- the other two's -- with Abbott, and it's going to
11   be pretty strong, powerful evidence, Your Honor, of --
12             THE COURT:  Well, you know, if you've not produced
13   this before, you know, they're not on notice.  I mean they're
14   on notice that these are -- you know, these are just as strong
15   drugs and have, you know --
16             MR. WILLIAMS:  Well, they --
17             THE COURT:  I mean maybe they cause similar kind of
18   problems, but --
19             MR. BALL:  She referenced 50 labels in her report, 50
20   different drug labels, not these.  And now we're supposed to
21   defend against new labels that they've come up that have never
22   been referenced in this?  That's not right.
23             THE COURT:  That's what I'm talking about.  These
24   labels.  You can't just pop these things up.
25             MR. WILLIAMS:  You're right, and they're on our
```

1   exhibit list, and they're in the supplemental report that has
2   been filed in five cases, and he -- and Dr. Oakley has been
3   deposed on --
4           THE COURT: Are you saying that this is no surprise
5   again, that these labels have been presented previously?
6           MR. WILLIAMS: Absolutely. Absolutely, Your Honor.
7   And let me -- I'm sorry. I lost my train of thought.
8           THE COURT: Don't worry. You've said enough.
9           Go ahead, Mr. Ball.
10          MR. BALL: It's a surprise to us, Your Honor, that
11  these labels -- it's not a surprise to us that they're going
12  to talk about Accutane and thalidomide. Okay. We don't agree
13  with it, but it's not a surprise. But it's a surprise to us
14  that, all of a sudden, these labels are going to be shown to a
15  jury because they haven't been shown to a jury in St. Louis or
16  they haven't been shown to a jury in the Southern District of
17  Illinois, and they're not referenced in their warnings
18  expert's report as saying that this is the kind of label you
19  should have used. That is a surprise to us, and we would have
20  approached this differently if they had told us that's what
21  they were going to do, and they haven't done that in this
22  case.
23          THE COURT: Okay. What about that? "This is the
24  kind of label you should have used."
25          MR. WILLIAMS: It's pretty clear. It's clear

1    evidence, and it's a clear comparison.  It's made by a

2    world-class expert who they deposed three times.

3           And if I may, Your Honor, Mr. Boundas and I got into

4    this case late, and Mr. Raniere, who's been fighting this

5    battle alone for a long time -- I don't -- I don't know if he

6    knew about the update, but the important thing is they knew

7    about the update.

8           THE COURT:  Well, what is it?  You know, Mr. Ball is

9    talking specifically about notification of these labels, these

10   particular labels.  I'm not talking about update.  Please.

11          MR. BALL:  There's no opinion from Dr. Oakley in any

12   of these cases that says, "You should have given the warning

13   that's in the thalidomide label" or "You should have given the

14   warning that's in the Accutane label."  That's not in there.

15   We didn't think we were defending that.  We didn't.

16          MR. WILLIAMS:  We're talking over each other because

17   Dr. Oakley is not a labeling expert and will not be giving

18   labeling opinions, but Dr. Oakley will compare what one does

19   with a potent teratogen.

20          THE COURT:  That's out.  I think you needed to give

21   them specific notice that this labeling was going to be

22   subject to dispute and expert testimony.

23          MR. WILLIAMS:  Your Honor, if I -- oh, just a point

24   of clarification there.  I know -- and I appreciate your

25   ruling on the label, but Dr. Oakley, I assume, will be able to

```
 1  testify about potent teratogens and that they're --
 2              THE COURT:  Yeah, they indicate they're on notice on
 3  that.
 4              MR. WILLIAMS:  -- it's one of the top three.
 5              THE COURT:  I don't have a problem with that.
 6              So I guess that was No. 8.  Let me --
 7              MR. BALL:  No.
 8              8 has been ruled on.  So I think we're down to No. 9.
 9              THE COURT:  9.  Okay.
10              LAW CLERK:  Judge, can you clarify 8?
11              THE COURT:  Oh, that was denied.
12              MR. BALL:  Yeah.
13              THE COURT:  He can testify that Depakote is among
14  those three most teratogenic drugs.
15              LAW CLERK:  And what is out is the labeling?
16              THE COURT:  The labeling -- yeah -- issue is out.
17              Okay.  Is there going to be any reference that
18  Depakote is the most teratogenic drug of these three?  Is that
19  going to happen?
20              MR. WILLIAMS:  Yes, Your Honor.  I think that's what
21  you just ruled.
22              MR. BALL:  No.  We're on No. 9.
23              THE COURT:  No.
24              10 was that it was one of the three most, not it was
25  the one, you know.
```

<u>CERTIFICATE</u>

      I, Gayle D. Madden, Registered Diplomate Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

      I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

      I further certify that this transcript contains pages 1 through 59 inclusive.

      Dated at St. Louis, Missouri, this 20th day of May, 2016.

      _____

      /s/ Gayle D. Madden

      GAYLE D. MADDEN, CSR, RDR, CRR

      Official Court Reporter