# EXHIBIT 3

Confidential - Subject to Further Confidentiality Review

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| B.P., A MINOR, BY DAWN FRAGNOLI INDIVIDUALLY AS PARENT AND NEXT FRIEND, | ) ) ) | No. 13-cv-324-SCW |
| Plaintiffs, | ) | |
| J.B., A MINOR, BY LINDA LEJEUNE INDIVIDUALLY AS LEGAL CUSTODIAN AND NEXT FRIEND, | ) ) ) | No. 13-cv-326-SCW |
| Plaintiffs, | ) | |
| vs. | ) | |
| ABBOTT LABORATORIES, INC., | ) | |
| Defendant. | ) | |

- C O N F I D E N T I A L -

SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

The videotaped 30(b)(6) deposition of ABBOTT LABORATORIES, INC. through JAMES EMBRESCIA, D.O., called for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, taken before JULIANA F. ZAJICEK, CSR No. 84-2604, a Certified Shorthand Reporter of said State of Illinois, at The Hyatt Deerfield, the Cook Room, 1750 Lake Cook Road, Deerfield, Illinois, on December 3, 2013, at 8:28 a.m.

Confidential - Subject to Further Confidentiality Review

Page 87

1  senior management down and through our commercial
2  organization.
3      Q.  To fulfill the duty to patients and
4  healthcare providers, Abbott knows it has a duty to
5  provide the most current, accurate and complete
6  product safety information possible about its drug
7  products?
8      MR. MacWILLIAMS:  Objection to form and scope.
9  BY THE WITNESS:
10     A.  Is there a question?  I'm sorry.
11 BY MR. HENDERSON:
12     Q.  Everything I have is going to have a
13 question mark at the end, even though it may sound
14 like a statement.
15     A.  Well, I didn't understand the question.
16 I'm sorry.
17     Q.  I'll redo.
18         To fulfill the duty to patients and
19 healthcare providers, Abbott knows that it has a duty
20 to provide the most current, accurate and complete
21 product safety information possible about its
22 drugs/products?
23     MR. MacWILLIAMS:  Objection; form and scope.
24 BY THE WITNESS:

Confidential - Subject to Further Confidentiality Review

Page 88

1      A.     And you are asking me do I believe that?
2   BY MR. HENDERSON:
3      Q.     Yes.
4      A.     I do believe Abbott should provide
5   accurate information, yes.
6      Q.     The company cannot and, in fact, it must
7   not ignore evolving scientific information that's
8   relevant to the safety of its products?
9      A.     Of course not.
10     Q.     Every employee at Abbott, whether in
11  safety or regulatory or marketing, owes the same
12  duties to the people who buy and use your products,
13  the same ethical duties?
14         MR. MacWILLIAMS:  Objection; form and scope.
15  BY THE WITNESS:
16     A.     I'm not sure if I understand your
17  question.  We have a code of ethics that every
18  employee is required to review, understand and sign.
19  BY MR. HENDERSON:
20     Q.     And it applies to everybody in every
21  department regardless if it's pharmacovigilance,
22  marketing or the janitor, correct?
23     A.     That's my understanding, yes.  I mean, I
24  haven't looked at the list myself, but...

Golkow Technologies, Inc. - 1.877.370.DEPS

1      Q.    Abbott did this because it knew it had the
2    responsibility to do whatever reasonable tests and
3    studies were necessary to ensure that Depakote was
4    safe on an ongoing basis?
5          MR. MacWILLIAMS:  Objection; form and foundation
6    and scope.
7    BY THE WITNESS:
8          A.    So we do have a responsibility to monitor
9    the safety profile of our product and its evolution.
10   BY MR. HENDERSON:
11         Q.    And if there is a test that's required,
12   research, a clinical trial in order to ensure the
13   safety of the drug, that's Abbott's responsibility to
14   do it?
15         MR. MacWILLIAMS:  Objection; form and
16   foundation.
17   BY THE WITNESS:
18         A.    Abbott is responsible for all
19   pharmacovigilance activities for every given drug,
20   yes.
21   BY MR. HENDERSON:
22         Q.    And if -- if your pharmacovigilance
23   give -- gives rise to a -- a signal, a safety signal,
24   you have a duty to investigate it to determine whether

Confidential - Subject to Further Confidentiality Review

Page 416

1    Q.    Dr. Embrescia, would you agree that Abbott
2    did have an ongoing responsibility to monitor the
3    worldwide medical literature on the safety of
4    valproate, Depakote?
5    A.    Yes.
6    Q.    From 1976, certainly through 1996,
7    correct?
8    A.    You said safety literature I think, didn't
9    you, yes?
10   Q.    Yes.
11   A.    If -- if you said safety literature, yes,
12   I did.
13   Q.    And that was up to your department to
14   handle that responsibility?
15   A.    Again, my understanding from the people I
16   talked to was that safety literature was monitored in
17   the pharmacovigilance group, certainly from reporting,
18   and then beyond that would have been shared, probably,
19   responsibility between the scientists and the safety
20   group.
21   Q.    You understood that monitoring the
22   worldwide safety literature or medical literature on
23   the safety of Depakote was critical for the safety and
24   well-being of your customers, people that took your

Confidential - Subject to Further Confidentiality Review

Page 417

1  drugs?

2        MR. MacWILLIAMS:  Objection; form and
3  foundation.
4  BY THE WITNESS:
5        A.    Well, the responsibility of the company is
6  to monitor safety data -- safety literature to
7  understand the drug.
8  BY MR. HENDERSON:
9        Q.    And you had a responsibility to be
10 vigilant about the safety of all drugs you marketed?
11       A.    Of course.
12       Q.    You knew that if information came to light
13 about the safety profile of a drug and the company
14 failed to provide relevant current safety information
15 to doctors, you would certainly foresee that that
16 might cause harm to patients who took your products?
17       MR. MacWILLIAMS:  Objection; form, foundation
18 and scope.
19 BY THE WITNESS:
20       A.    So, again, the role of the
21 pharmacovigilance group is to assess safety data and
22 make it available through labeling, whatever.
23 BY MR. HENDERSON:
24       Q.    And if you failed to do that, if you

Confidential - Subject to Further Confidentiality Review

Page 465

1  teratogenicity."
2  BY MR. HENDERSON:
3      Q.   Okay.  So may produce teratogenicity to
4  you, the only one way to interpret that is just to
5  say, it may produce teratogenicity?
6      A.   That's the way I interpret it.
7      Q.   Okay.  Abbott did, at all times it was
8  marketing this drug, have the legal, ethical and
9  scientific authority to conduct whatever studies it
10 felt were appropriate to investigate the safety of
11 this drug, would you agree?
12     MR. MacWILLIAMS:  Objection; form, foundation
13 and scope.
14 BY THE WITNESS:
15     A.   So, again, I think I've said before, I
16 don't conduct studies.  We make -- from
17 pharmacovigilance responsibility --
18 BY MR. HENDERSON:
19     Q.   Pharmacovigilance studies.
20     A.   We don't conduct pharmacovigilance
21 studies.  There are no such things as
22 pharmacovigilance studies.
23     Q.   Epidemiologic studies?
24     A.   There are epidemiologic studies.

Confidential - Subject to Further Confidentiality Review

Page 502

1 REPORTER'S CERTIFICATE

2 I, JULIANA F. ZAJICEK, C.S.R. No. 84-2604,

3 a Certified Shorthand Reporter, do hereby certify:

4 That previous to the commencement of the

5 examination of the witness herein, the witness was

6 duly sworn to testify the whole truth concerning the

7 matters herein;

8 That the foregoing deposition transcript

9 was reported stenographically by me, was thereafter

10 reduced to typewriting under my personal direction and

11 constitutes a true record of the testimony given and

12 the proceedings had;

13 That the said deposition was taken before

14 me at the time and place specified;

15 That I am not a relative or employee or

16 attorney or counsel, nor a relative or employee of

17 such attorney or counsel for any of the parties

18 hereto, nor interested directly or indirectly in the

19 outcome of this action.

20 IN WITNESS WHEREOF, I do hereunto set my

21 hand on this 15th day of December, 2013.

22

23 _____

24 JULIANA F. ZAJICEK, Certified Reporter