# EXHIBIT 3

Patti Nemeth, M.D.

Page 1

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

- - -

IN RE DEPAKOTE:                :
RHEALYN ALEXANDER,             :
et al.,                        : No.
    Plaintiffs,              : 12-52-NJR-SCW
vs.                            :
ABBOTT LABORATORIES,           :
INC.,                          :
    Defendant.               :


DEPOSITION UNDER ORAL EXAMINATION OF

PATTI NEMETH, M.D.

9:00 a.m.

Rio Rancho, New Mexico


- - -

REPORTED BY:  DANA SREBRENICK, CRR, CLR

- - -


Golkow Technologies, Inc.

877.370.3377 ph | 917.591.5672 fax

deps@golkow.com


Golkow Technologies, Inc. - 1.877.370.DEPS

1   BY MR. BROSS:
2     Q.   In the new label, the new black box, it
3   says, "Valproate should only be used to treat
4   pregnant women with epilepsy or bipolar disorder
5   if other medications have failed to control their
6   symptoms or are otherwise unacceptable."
7          I'm reading the section under the birth
8   defects.  It says, "Pregnancy registry data show
9   that maternal Valproate use can cause neural tube
10  defects and other structural abnormalities, for
11  example, craniofacial defects, cardiovascular
12  malformations, and malformations involving various
13  body systems."
14         And that "the rate of congenital
15  malformations among babies born to mothers using
16  Valproate is about four times higher than the rate
17  among babies born to epileptic mothers using other
18  antiseizure monotherapies."
19         And there's a section under the use in
20  women of childbearing potential, it says, "Because
21  of the risk to the fetus of decreased" -- there is
22  a section in the use in women of childbearing
23  potential that says, "Because of the risk to the
24  fetus of decreased I.Q. and major congenital
25  malformations, including the neural tube defects,

Patti Nemeth, M.D.

Page 54

1 which may occur very early in pregnancy, Valproate
2 should not be administered to a woman of
3 childbearing potential unless the drug is
4 essential to the management of her medical
5 condition."
6     And the reason I wanted to read those few
7 sections is to see if you recall whether the 2004
8 label at issue of Ms. Sansone had these sort of
9 considerations or instructions?
10   A.  I do recall --
11     MR. KLATT: Objection, form.
12   A.  Okay. I do recall that these were
13 potential side effects in pregnancies, risk to
14 fetus, that is, the congenital malformations
15 related to the neural tubes and craniofacial and
16 cardiac, I did know this. I did not know -- I did
17 not recall the degree of risk compared to other
18 antiseizure meds.
19   BY MR. BROSS:
20   Q.  If you'd known the four times higher
21 risk, would that have figured into your
22 prescribing habits?
23     MR. KLATT: Objection, form and
24 foundation.
25     MR. OTT: Object on speculation. Subject

1  to that, try to answer it best as you can.
2       A.   Can I ask you what it said in 2004?
3     BY MR. BROSS:
4       Q.   Yeah, I'll show you '04, but I can tell
5  you it did not have the terminology about four
6  times higher risk.
7            MR. KLATT:  Objection, form.
8       A.   But I did -- okay.  I did know that it
9  was a higher risk.  I -- but I didn't know how
10 high it was, but I certainly knew it was greater.
11 And let's see, I'm trying to remember, but I was
12 thinking it was two or three times higher, is what
13 I was thinking.  So would I have done anything
14 different?
15           I would have had the same discussion
16 because there's still the question of is the drug
17 essential to the patient, in this case the mother?
18 And we would -- we would weigh the risks and --
19 and determine whether or not we could choose
20 another drug depending on when it is.  Again, you
21 can't do it during pregnancy.
22           So it is -- it's difficult to know
23 exactly what I would have done if I had a
24 different information than I had at the time.
25           MR. BROSS:  I'd like to mark and show you

```
 1      Q.    To be current?
 2            MR. KLATT:  Objection, form.
 3      A.    Well, yes, to be current.
 4    BY MR. BROSS:
 5      Q.    And to not --
 6      A.    They actually supplement the PDR, so when
 7    things are different, we get a sheet and we put
 8    them at the back of the book after we look at
 9    them.
10      Q.    And you would expect a company to
11    supplement their labels in the PDR?
12      A.    Oh, yes.
13      Q.    And you may not be aware that or are you
14    aware that this portion of the label remained the
15    same until approximately 2008?
16            MR. KLATT:  Objection, speculation.
17      A.    I'm -- I'm not aware of when it changed
18    or if it changed.
19      Q.    And if the manufacturer, Abbott, had
20    actual information about the overall incidence
21    rates for malformations that were directly related
22    to Depakote use, you would have wanted that to
23    have been included in the label; is that correct?
24            MR. KLATT:  Again, objection, form and
25    foundation.
```

Page 64

1      A.    Yes.
2      BY MR. BROSS:
3      Q.    And may that have played a decision in
4   your prescription decisions?
5            MR. KLATT:  Objection, speculation.
6      A.    Well, it would depend on the situation.
7      Q.    But if the potential for increased
8   congenital birth defects was actually four-fold
9   higher, would that have been important for you to
10  know?
11           MR. KLATT:  Objection, form and
12  foundation.
13     A.    It would be important to know.  But,
14  again, without knowing exactly the situation at
15  the time with the patient being pregnant, having
16  seizures, tol -- not tolerating other medications,
17  I don't know exactly what our conversation -- I
18  know what our conversation would be about, but I
19  don't know what the -- what decision we would come
20  up with, but I would definitely talk to the
21  patient.
22     Q.    Is there anything here, though, that led
23  you to believe or leads you to believe that
24  Depakote is more teratogenic than other
25  antiepileptics?

Patti Nemeth, M.D.

Page 122

1 CERTIFICATION
2
3
4 I, DANA N. SREBRENICK, a Certified Court
5 Reporter for and within the State of New Mexico,
6 do hereby certify:
7 That the witness whose testimony as herein
8 set forth, was duly sworn by me; and that the
9 within transcript is a true record of the
10 testimony given by said witness.
11 I further certify that I am not related to
12 any of the parties to this action by blood or
13 marriage, and that I am in no way interested in
14 the outcome of this matter.
15 IN WITNESS WHEREOF, I have hereunto set my
16 hand this 5th day of October 5, 2016.
17
18 _____
19 DANA N. SREBRENICK, CLR, CRR
20
21 *      *      *
22
23
24
25