# Exhibit E

```
 1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF ILLINOIS
 2
     E.G., a minor, BY CHRISTINA    )
 3   RAQUEL, individually as parent)
     and next friend of E.G.,       )
 4                                  )
                 Plaintiff,         )
 5                                  )
         vs.                        ) Case No. 15-cv-702-NJR
 6                                  )
     ABBOTT LABORATORIES, INC.,     )
 7                                  ) May 23, 2017
                 Defendant.         )
 8
                JURY TRIAL DAY/VOLUME II - P.M. SESSION
 9           BEFORE THE HONORABLE NANCY J. ROSENSTENGEL
                 UNITED STATES DISTRICT COURT JUDGE
10
                              APPEARANCES
11
     FOR PLAINTIFF:              John E. Williams, Esq.
12                               John T. Boundas, Esq.
                                 Williams Kherkher
13                               8441 Gulf Freeway, Suite 600
                                 Houston, TX  77017
14                               (713) 230-2200

15   FOR DEFENDANT:              Joel H. Smith, Esq.
                                 Bowman and Brooke LLP
16                               1441 Main St., Suite 1200
                                 Columbia, SC  29201
17                               (803) 726-7422

18                               Dan H. Ball, Esq.
                                 Bryan Cave - St. Louis
19                               211 N. Broadway, Suite 3600
                                 St. Louis, MO  63102
20                               (314) 259-2000

21   REPORTED BY:                Laura A. Esposito, RPR, CRR
                                 U.S. District Court
22                               750 Missouri Avenue
                                 East St. Louis, IL  62201
23                               (618) 482-9481
                                 Laura_Esposito@ilsd.uscourts.gov
24
          Proceedings recorded by mechanical stenography;
25   transcript produced by computer-aided transcription.
```

1  has read the information, because this information is out
2  there and well-known, and because Abbott has put it out
3  there, she has read it and she says, "These are the risks."
4      The best evidence that these doctors knew this was
5  what they told her.  They told her about the risks of birth
6  defects.  And Dr. Meer, when she describes it -- you're not
7  going to hear Dr. Meer in the plaintiff's case but we'll
8  play her video for you.  Listen to what she says.  She gives
9  a thorough, complete description of exactly what she would
10 tell patients at this time period, and her record says that
11 she did this.  Her medical record said she told this
12 patient, so obviously she has been well-informed.
13     But it didn't work as well as it had in the past
14 because she was heavy.  She went back.  Dr. Giese had her go
15 up to 2,000 milligrams.  She went up to 2,000 milligrams and
16 it caused some problems for her.  But Dr. Giese obviously
17 knew about risks.  He had her sign the consent form.  There
18 is a form at El Hogar that they sign and it says the risks
19 have been explained to me, so obviously, again, he's making
20 a prescription of an increase of a thousand milligrams.
21 He's going to make sure that she's re-warned because he
22 knows this risk.
23     Eleven days later she comes back.  She's been on a
24 bus and defecated in her pants because of an upset stomach,
25 which can be a risk of Depakote.  And she's defecated in her

Defendant's Opening Statement

```
 1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF ILLINOIS
 2
     E.G., a minor, BY CHRISTINA   )
 3   RAQUEL, individually as parent)
     and next friend of E.G.,      )
 4                                 )
                 Plaintiff,        )
 5                                 )
         vs.                       ) Case No. 15-cv-702-NJR
 6                                 )
     ABBOTT LABORATORIES, INC.,    )
 7                                 ) June 7, 2017
                 Defendant.        )
 8
                      JURY TRIAL DAY/VOLUME XI
 9            BEFORE THE HONORABLE NANCY J. ROSENSTENGEL
                  UNITED STATES DISTRICT COURT JUDGE
10
                              APPEARANCES
11
     FOR PLAINTIFF:             John E. Williams, Esq.
12                              John T. Boundas, Esq.
                                Williams Kherkher
13                              8441 Gulf Freeway, Suite 600
                                Houston, TX  77017
14                              (713) 230-2200

15   FOR DEFENDANT:             Joel H. Smith, Esq.
                                Bowman and Brooke LLP
16                              1441 Main St., Suite 1200
                                Columbia, SC  29201
17                              (803) 726-7422

18                              Dan H. Ball, Esq.
                                Bryan Cave - St. Louis
19                              211 N. Broadway, Suite 3600
                                St. Louis, MO  63102
20                              (314) 259-2000

21   REPORTED BY:               Laura A. Esposito, RPR, CRR
                                U.S. District Court
22                              750 Missouri Avenue
                                East St. Louis, IL  62201
23                              (618) 482-9481
                                Laura_Esposito@ilsd.uscourts.gov
24
          Proceedings recorded by mechanical stenography;
25   transcript produced by computer-aided transcription.
```

1   pregnancy, and said she discussed other treatment options.
2   Okay.  How much more information does someone need to say
3   that they would have done something differently?  This is
4   spina bifida we're talking about.
5           And I want you to know, I'm not saying she's done
6   something wrong.  I'm saying she probably did something
7   right to take care of herself.  It was probably a good
8   decision to take this medication.
9           Then she goes to see Dr. Giese.  And while
10  Dr. Giese doesn't have a great memory of it, we do know that
11  on the same day she saw Dr. Giese she signed a consent form.
12  Now, Dr. Franklin said it was a fixed rule that nurses went
13  over these with the patients, so I'm assuming that that was
14  done here, but she did sign it.  And, again, risk and
15  benefits were talked about, and possible alternative
16  treatments.  That's two times in a row in four days.
17          And then she goes to see Dr. Han.  And what does
18  Dr. Han say?  The same thing really.  "I reviewed different
19  options with her."  What did he testify?  He said, "I would
20  have told her the risks and benefits of each and the risks
21  and benefits of staying on Depakote."  And he didn't think
22  it was going to work.  He thought dropping down to
23  1500 milligrams would not be therapeutic.  He didn't know
24  that for a year she'd been on a thousand and 1250 and had no
25  evidence of mania.  But she knew.  She knew her medications.

```
 1   She knew what she was doing.  She is no shrinking violet
 2   when it comes to telling her doctors what she needs to do.
 3           What does she do?  She elected to try the
 4   1500 milligrams that he had suggested -- that she had
 5   suggested.  And what did he say he would have told her that
 6   he knew at that time?  He said he would have told her that
 7   the two specific alternatives that he offered, Seroquel,
 8   which is antipsychotic -- she was already on two -- and
 9   Lamictal, which is the other mood stabilizer that she
10   decided not to take, based on his description of what their
11   benefits were as well as their risks.  He knew.
12           So in all three situations she was warned.  These
13   doctors knew enough about the risk of this medication not
14   just to say in a deposition, *I know about it*, but to
15   document in their records three times within 15 days that
16   they actually proposed alternatives, gave warnings.  Signed
17   consent forms.  It's all right there.
18           But you heard her deposition and you heard this
19   constant refrain:  "Could be.  I don't recall."  Every time
20   she was asked, not just about Depakote side effects or
21   Depakote risks -- and there are other risks, risks to her,
22   risks to the baby from these other medications -- she said,
23   "Could be.  I don't recall," over and over and over again.
24   Why is that?  Why is that?  Because if she were to tell us
25   that she does remember, what would that do today?  Would we
```

```
 1   be here today?  Is this credible?
 2          Now, I've told you, I'm not blaming Ms. Raquel for
 3   taking this medication.  I want you to understand her.  I
 4   also want you to understand something else:  She's got a lot
 5   to gain by not remembering.
 6          So she goes back to El Hogar in 2008.  She sees the
 7   same doctor.  You know, I'm not sure it makes sense that you
 8   would go back to the same doctor who had failed to tell you
 9   about a spina bifida risk.  I'm not sure that makes sense to
10   start with, but may have.  And her options were probably
11   limited, frankly, right?  But wouldn't you expect her to
12   walk in and see Dr. Franklin, her regular doctor who she's
13   confided in over the most intimate details of her life and
14   say, *Dr. Franklin, why didn't you tell me?  I have a child*
15   *now who's -- why didn't you tell me?*  But she didn't.  She
16   tells us that the reason she did -- in her deposition she
17   said, "I just never went back and asked them."  She's being
18   treated by the same doctor.  That's false.  She did go back.
19   But she never asked.  Wouldn't you?  I mean the most
20   impressive thing to ever happen in your life, to have a
21   child who's disabled, wouldn't you go back and say --
22   wouldn't you be feeling like, I've been deceived, I
23   didn't -- you didn't do your job, you committed malpractice,
24   and you'd go back and say, *Hey, why did you do that?  Why*
25   *didn't you tell me?*  Unless they did.
```

Defendant's Closing Argument